IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOANEY TODD, | * |
| Plaintiff, | * |
| v. | * Case No.: RWT 13cv1776 |
| PRINCE GEORGE'S COUNTY, MD, | * |
| Defendant. | * |

**MEMORANDUM OPINION**

The Plaintiff, a former employee of Prince George's County, Maryland, has sued the County alleging violations of the Prince George's County Human Relations Act ("PGCHRA"), the Maryland Human Relations Act ("Title 20"), the Americans with Disabilities Act ("ADA"), and the Maryland Wage Payment and Collection Law ("MWPCL"). ECF No. 2. The County has filed a motion to dismiss or for summary judgment. ECF No. 8. For the reasons discussed below, this Court will dismiss all claims except for those relating to alleged violations of the ADA based on Plaintiff's foot, knee, and hip injury.

I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Joaney Todd is a former resident of Maryland who worked for Prince George's County (the "County") from November, 1980 until May, 2012. When last employed, she was a Project Manager/Planning/CD II in the Community Planning and Development Division of the Department of Housing and Community Development ("DHCD"). Complaint, ECF No. 2 at ¶¶ 9, 45. On March 11, 2010, Ms. Todd suffered a foot, knee, and hip injury from a fall at work.

*Id.* at ¶ 12. The injury required physical therapy, medication, and corrective surgery as late as March, 2013, and Ms. Todd claims that it continues to cause her pain and she still struggles to ambulate. *Id.* at ¶¶ 12-13.

Shortly after her fall, Ms. Todd informed her direct supervisor of the injury and provided her employer with a disability certificate from her surgeon. *Id*. at ¶ 15. Ms. Todd subsequently took medical leave from March 11th to March 15th and from March 19th to July 14th of 2010. *Id*. at ¶ 15. During her recovery, Ms. Todd secured donated sick leave from coworkers, allegedly, however, without the assistance of the County generally given to other employees in need of donated leave. *Id*. at ¶¶ 21-23. Ms. Todd alleges that during the pay period ending June 5, 2010, the County refused to pay her for the donated leave in violation of its own policies. *Id.* at ¶ 24. On June 16, the Director of the County Division wrote a letter which denied her any more donated leave until she could provide a detailed narrative medical report on her condition. *Id*. at ¶ 25. Ms. Todd alleges that the letter was pretext for discrimination as she had already provided the County with documentation of her condition. *Id.*

On July 1, 2010, Ms. Todd's physician approved her for work with an accommodation, documentation of which she provided to the County. The request for accommodation stated that Ms. Todd moved with "maximum difficulty using crutches" and that she should be limited to sedentary duties. *Id.* at ¶ 27. Ms. Todd alleges that the County apparently "ignored the request for accommodation" and warned her that if she did not return to work without an accommodation, she may be fired. *Id.* at ¶ 28. On July 14, Ms. Todd claims she returned to work without the accommodation and was assigned to tasks which required her to perform physical duties that caused her pain. *Id.* at ¶ 29.

In July of 2010, Ms. Todd complained to numerous County employees, including her direct supervisor, the human resources supervisor, and her division's director, about the lack of accommodation. *Id.* at ¶ 31. In August, 2010, Ms. Todd filed a charge of discrimination based on disability with the EEOC. *Id.* at ¶ 33.

Ms. Todd allegedly continued to experience pain while executing her work obligations and in September, 2010, she provided the County with an additional disability certificate from her doctor requesting an accommodation of light duty. *Id.* at ¶ 34. Ms. Todd claims that her case load was subsequently increased from twelve to twenty-eight cases, higher than the twenty-five project maximum of her position, an increase she claims was in retaliation for her filing of the EEOC complaint. She also claims that she was instructed by her supervisors to drop her EEOC complaint. Ms. Todd amended her EEOC complaint in January, 2011 to include a charge of retaliation in light of the increased caseload. *Id.* at ¶¶ 33-37. Ms. Todd's Complaint also alleges that duties were reassigned to other employees and that the County failed to promote her because of her disability and/or in retaliation for filing an EEOC complaint. *Id.* at ¶¶ 40-44.

Since 2008, Ms. Todd has also suffered from "insulin dependent diabetes type 2" and claims that requests for flexible work breaks to check her blood glucose levels in a private area were denied. *Id.* at ¶ 30. In August, 2011, Ms. Todd filed another accommodation request, this one concerning her diabetes which she claims was also ignored. *Id.* at ¶ 44. Ms. Todd resigned on May 31, 2012. *Id.* at ¶ 45.

On May 2, 2013, Ms. Todd filed a Complaint in the Circuit Court for Prince George's County, which the County removed to this Court. ECF Nos. 1, 2. The Complaint alleges violation of the Prince George's County Human Relations Act ("PGCHRA"), the Maryland Human Relations Act ("Title 20"), the Americans with Disabilities Act ("ADA"), and the

Maryland Wage Payment and Collection Law ("MWPCL"). On June 26, 2013, the County filed its Motion to Dismiss. ECF No. 8. Ms. Todd filed her Response on October 1, 2013,[1] ECF No. 16, to which the County replied on October 16, 2013, ECF No. 17.

## II.     STANDARD OF REVIEW

### A. Motion to Dismiss

A motion to dismiss tests the sufficiency of a plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Generally, a plaintiff's complaint must satisfy only the "simplified pleading standard" of Rule 8(a). *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). This standard requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Swierkiewicz*, 534 U.S. at 513.

The Supreme Court has recently clarified the standard in Rule 12(b)(6) motions. *Compare Ashcroft v. Iqbal*, 556 U.S. 662 (2009), *with Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). These cases demonstrate that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)). This showing requires "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

In evaluating a motion to dismiss, a court must review the complaint to determine which pleadings are entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 678-79. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679; *see Twombly*, 550 U.S. at 555 ("factual allegations must be enough to raise a right to relief above the speculative level."). A Court must construe all factual allegations in a light most favorable to the plaintiff. *See*

---

[1] Ms. Todd filed this response *pro se* following the withdrawal of her counsel on July 30, 2013. ECF No. 14.

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The court need not, however, accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

### B. Summary Judgment

Summary judgment should be rendered if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A material fact is one 'that might affect the outcome of the suit under the governing law.'" *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Disputes of material fact are genuine if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

To avoid summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 256. While the court must view the evidence in the light most favorable to the nonmoving party, *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006), it must also "prevent factually unsupported claims and defenses from proceeding to trial," *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) (quoting *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)) (internal quotation marks omitted).

## III. DISCUSSION

### A. Plaintiff's State Law Claims and the Local Government Tort Claims Act

Counts I, II, and IV allege state law claims for disability discrimination and improper withholding of wages. However, these claims will be dismissed because the Plaintiff has failed to comply with the notice requirement of the Local Government Torts Claim Act ("LGTCA"). Md. Code Ann., Cts. & Jud. Proc. § 5-304.

The LGTCA bars actions for unliquidated damages against local governments or their employees unless the plaintiff provides notice of the claim within 180 days after the injury. *Id*. This notice provision "creates a procedural obligation that a plaintiff must meet in filing a tort action. A plaintiff must plead satisfaction of the notice requirement in their complaint." *Quigley v. United States*, 865 F. Supp. 2d 685 (D. Md. 2012) (quoting *Hansen v. City of Laurel*, 25 A.3d 122, 137 (Md. 2011)). Parties need not only satisfy the notice requirement, but "also plead such satisfaction in his/her complaint. If a plaintiff omits this step, he or she is subject to a motion to dismiss . . . ." *Hansen*, 25 A.3d at 137; *see also LaPier v. Prince George's County, Md*., 2011 WL 4501372 at *5 (D. Md. Sept. 27, 2011) (granting summary judgment because of failure to comply with the LGTCA's notice provision and because even after receiving notice of the failure to plead in the motion to dismiss, as here, the plaintiff failed to "move to amend [her] complaint, voluntarily dismiss [her] case, or take any other step evidencing the intent to comply with the LGTCA's notice provision"). It is uncontested that Ms. Todd failed to plead satisfaction of the

notice requirement and therefore, the claims arising under state law (counts I, II, and IV) must be dismissed for failure to plead satisfaction of the LGTCA notice requirement.[2]

### B. Plaintiff's Claim Under the Americans with Disabilities Act

#### 1. Exhaustion of Administrative Remedies

To bring an action in federal court under Title I of the ADA, a plaintiff must exhaust administrative remedies by filing a charge with the EEOC or a local agency with equivalent authority. *See* 42 U.S.C. § 12117; *Talbot v. U.S. Foodservice, Inc.*, 191 F.Supp.2d 637, 639-40 (D. Md. 2002). The scope of the plaintiff's subsequent federal lawsuit is limited by the issues raised in the administrative claim. *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002) ("The EEOC charge defines the scope of the plaintiff's right to institute a civil suit."); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) ("Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint" are considered exhausted.).[3]

Determining whether administrative remedies have been exhausted involves a "balance between providing notice to employers and the EEOC on the one hand and ensuring plaintiffs are not tripped up over technicalities on the other." *Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 594 (4th Cir. 2012). A claim will typically be barred if the basis for the alleged or harm claimed

---

[2] Ordinarily, *pro se* plaintiffs are subject to "less stringent" standards. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). In filing her Complaint, however, Plaintiff was represented by counsel, *see* ECF No. 2 at 23.

[3] While this case addressed Title VII, many circuits have acknowledged "the almost uniform practice of courts in considering the authoritative body of Title VII case law when interpreting the comparable provisions of other federal statutes." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 342 (4th Cir. 2008) (interpreting the Fair Labor Standards Act); *see also McKennon v. Nashville Banner Publ'g. Co.*, 513 U.S. 352, 357–61 (1995) (interpreting the Age Discrimination in Employment Act); *Garcia v. Johanns*, 444 F.3d 625, 631–33 & n.7 (D.C. Cir. 2006) (interpreting the Equal Credit Opportunity Act); *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir.1998) (interpreting the retaliation provision of the Americans with Disabilities Act).

differs between the administrative and federal suits. *See Evans*, 80 F.3d at 963-64; *Lawson v. Burlington Indus., Inc*., 683 F.2d 862, 863-64 (4th Cir.1982) (claim of discriminatory failure to rehire barred because administrative charge only alleged illegal layoff). However, the exhaustion requirement is satisfied, for example, where "both the EEOC charge and the complaint included claims of retaliation by the same actor, but involved different retaliatory conduct." *Sydnor*, 681 F.3d at 594 (citing *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 248 (4th Cir. 2000)).

The County argues that Ms. Todd has failed to exhaust her administrative remedies for any claims she did not specifically state in her EEOC complaint. The County would, therefore, seem to have the Court limit her suit to (1) a claim of disability discrimination in the County's failure to permit Ms. Todd to use donated leave while she was recovering from her injury sustained from the fall at work and (2) retaliation by increasing her caseload from twelve cases to twenty-eight cases. Defendant's Motion to Dismiss or for Summary Judgment ("Def. Mot."), ECF No. 8-1, at 9. This would require dismissal of many of Ms. Todd's assertions, including her claim of failure to promote, reassignment of work, failure to accommodate her diabetes, and retaliation for filing the original EEOC charge. *See Id.* at 9–10; Compl. at ¶¶ 16–18, 26–32, 37–45.

To satisfy the administrative exhaustion requirement, claims must be "reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint." *See Evans*, 80 F.3d at 963. The Fourth Circuit has held, however, that "the exhaustion requirement should not become a tripwire for hapless plaintiffs . . . It would be inconsistent with this framework to require untrained parties to provide a detailed essay to the EEOC in order to exhaust their administrative remedies." *Sydnor*, 681 F.3d at 594.

In light of the policy of ensuring that plaintiffs are "not tripped up over technicalities," *Sydnor* 681 F.3d at 594, interpreting the alleged instances of discrimination regarding Ms. Todd's leg injury to be limited only to the failure to permit her use of donated leave would contravene the goals of administrative exhaustion. At this stage, therefore, the Court will not dismiss the other alleged discriminatory acts based on Ms. Todd's leg injury. The additionally discriminatory acts alleged in the Complaint with respect to this injury are sufficiently reasonably related to those specifically spelled out in the EEOC petition.

Ms. Todd's allegations of discrimination on the basis of her diabetes, however, do not reasonably relate to her original or amended EEOC charges. Compl., ¶¶ 27–31. Ms. Todd did not raise the diabetes claims in her EEOC complaint. This is clearly a separate and distinct issue from her leg injury and as such, Ms. Todd has not exhausted her administrative remedies with regard to this issue.

**2. Defining Disability Under the ADA**

Under the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 2552 (codified in scattered sections of Title 42 of the United States Code) individuals can show they are disabled by demonstrating "a physical . . . impairment that substantially limits one or more major life activities . . . ." 42 U.S.C. § 12102(1)(A). Prior to the ADAAA, which became effective in January, 2009, Supreme Court jurisprudence employed a narrow reading of the terms "substantially limits" and "major" as "need[ing] to be interpreted strictly to create a demanding standard for qualifying as disabled." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002). In passing the ADAAA, Congress explicitly sought to broaden the definition of disability under the Act. With respect to the Supreme Court's prior narrow standard, Congress

counseled, "[t]he resulting court decisions contribute to a legal environment in which individuals must demonstrate an inappropriately high degree of functional limitation in order to be protected from discrimination under the ADA." Statement of the Managers to Accompany S. 3406, The Americans with Disabilities Act Amendments Act of 2008.

The ADAAA states that, "it is the intent of Congress that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations . . . ." Pub. L. No. 110–325, § 2(b)(5), 122 Stat. at 3554. As a result, "the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." *Id*. As previously noted, however, the ADAAA came into effect January 1, 2009, and the Fourth Circuit has held these amendments not to apply retroactively. *See, e.g., Shin v. Univ. of Md. Med. Sys. Corp.*, 369 F App'x 472, 479 n.14 (4th Cir. 2010). Consequently, "there is now a lack of case law relating to the interpretation of the ADAAA." *Feldman v. Law Enforcement Associates Corp.,* 779 F. Supp. 2d 472, 483 (E.D.N.C. 2011). As Ms. Todd sustained her leg injury on March 11, 2010—a full year after the ADAAA became effective—the amendments clearly apply to her claim. Compl. at ¶ 12.

The County seeks to dismiss Ms. Todd's ADA claim arguing that her leg injury does not constitute a "disability" within the meaning of the statute. Def. Mot. at 10–13. The County's discussion of the law, however, does not take into consideration the 2008 Amendments. To the contrary, the County relies heavily on *Pollard v. High's of Baltimore, Inc.*, based on earlier Supreme Court precedent. 281 F.3d 462 (4th Cir. 2002).

In light of the lesser scrutiny afforded the "disability" determination under the ADAAA, Ms. Todd's ADA claims stemming from her leg injury cannot be said to fail as a matter of law to satisfy the statutory requirement of being "disabled." Ms. Todd's complaint alleges that her

injury has lasted more than three years and that despite extensive efforts on her part to rehabilitate, she still cannot ambulate without crutches and a fracture boot. Accordingly, the Defendant's Motion to Dismiss or in the Alternative for Summary Judgment will be denied with respect to the Plaintiff's ADA claim based on her leg injury.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant the Defendant's Motion to Dismiss with regard to Counts I, II, and IV and Count III with respect to the Plaintiff's claims regarding her diabetes. The Court will deny the Defendant's Motion with regard to Plaintiff's Claims under the ADA on the basis of alleged discrimination because of the injury to her foot, knee, and hip.

Date: March 25, 2014                                   /s/
                                         ROGER W. TITUS
                                   UNITED STATES DISTRICT JUDGE