## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **JOANEY TODD,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Case No. RWT 13-cv-1776 |
| | * | |
| **PRINCE GEORGE'S COUNTY, MD,** | * | |
| | * | |
| Defendants. | * | |
| | * | |

## MEMORANDUM OPINION AND ORDER

On May 2, 2013, Plaintiff Joaney Todd filed suit in the Circuit Court for Prince George's County, Maryland alleging discriminatory and retaliatory conduct by Prince George's County, Maryland ("the County") in violation of several state and federal statutes over the course of two years, including the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 *et seq.* ECF No. 2. On June 19, 2013, the County removed the action to this Court. ECF No. 1. Both parties now move for summary judgment as to all remaining claims, ECF Nos. 36, 38, and the County moves to strike numerous exhibits in Todd's filings and for sanctions, ECF No. 39.

## BACKGROUND

Todd was employed with the County from November 1980 to June 2012. ECF No. 2. Her last position was in the County's Community Planning and Development Division, Community Development and Services Delivery, as Project Manager/Planning/Community Developer II. *Id.* ¶¶ 9, 45. On March 11, 2010, Todd sustained a foot, knee, and hip injury from a fall at work, which she claims is the basis of her disability. *Id.* The injury required physical therapy, pain medication, and corrective surgery during March 2013. *Id.* Todd claims that she still experiences pain and discomfort when walking. *Id.*

1

From March 11 through July 14, 2010, Todd was on disability leave due to her injury. ECF No. 36-2, at 33.  On April 30, 2010, Todd applied for an open position—the Community Services Manager—which Todd claims the County denied in retaliation for filing an Equal Employment Opportunity Commission ("EEOC") complaint in August 2010.  *Id.* at 9.  Her application was initially listed as one of the highest qualifying, but dropped during the interview period.  *Id.* at 10.  In the end, the County chose a better qualified applicant with a higher overall score than Todd, and who the County maintains had superior knowledge and experience performing the job duties that the position entailed.  *Id.* at 10–11.

On June 16, 2010, the County notified Todd that she was on leave without pay status, and that additional paid leave would not be approved until she submitted documentation from her physician detailing restrictions on her job duties.[1]  *Id.* at 6.  The County then received conflicting doctors' reports regarding Todd's ability to return to work with or without an accommodation. Todd's treating physician approved her to return to work with an accommodation request on July 1, 2010, stating that she moved with "maximum difficulty using crutches" and should be limited to sedentary duties.  ECF No. 2, ¶ 27.  On the other hand, Dr. Robert Smith, an orthopedic surgeon, cleared Todd to return to work on July 8, 2010 with no restrictions, stating Todd evidenced neither fractures nor dislocations and could perform at full duty with no accommodations.  ECF No. 36, at Ex. 1.1(k).  Ultimately, Todd did not submit the required documentation by the June 25, 2010 deadline.[2]  *Id.* at 6.

On July 14, 2010, Todd returned to work and claims that she was not provided the accommodation requested and was assigned to tasks which required physical duties that caused

---

[1] The County allows "leave donations" where other employees are permitted to donate leave to sick or injured employees once that employee has exhausted all of his/her leave.  The approval of leave donations is subject to the discretion of the employee's division Director.  ECF No. 36-2, at 6–7.

[2] Todd completed the Family and Medical Leave Request forms on August 9, 2010.  ECF No. 36, Ex. 3.2.

her pain.  ECF No. 2, ¶ 27.  In August 2010, Todd filed a charge of discrimination based on her disability under the ADA with the EEOC, and as a result asserts the County increased her case load for the next two months from approximately twelve to twenty-eight cases.  ECF No. 36-2, at 13.  The County maintains these increases were consistent with an overall increase in everyone's workload due to the new fiscal year and Todd being detailed to the Acting Community Developer III Position.  *Id.* at 13–14.  Todd amended her EEOC complaint in January 2011 to include a charge of retaliation—that the County reassigned her duties to other employees and denied her a promotion because of her disability and/or in retaliation for filing an EEOC complaint.  ECF No. 2, ¶¶ 40–44.

On August 10, 2010, pursuant to her union member rights and collective bargaining agreement, Todd filed a grievance involving the denial of leave, benefits, and acting pay. ECF No. 36, Ex. 1.12.  Ultimately, Todd received leave donations, disability leave for March 12 and 19 through June 30, 2010; administrative leave from July 1 through July 13, 2010; retroactive acting pay in the amount of $435.25; 9.25 hours of personal leave; 1,725 hours of compensatory leave; 31.25 hours of annual leave; and 63 hours of sick leave.  *Id*.  Todd voluntarily retired from County service on June 30, 2012.  ECF No. 36-2, at 18–19.  Neither party disputes that Todd's retirement was "a normal retirement and not a disability-based retirement," and that Todd received all of her retirement benefits.  *Id.*

On March 26, 2014, this Court granted partial summary judgment against Todd, dismissing her claims under both state law, the Local Government Tort Claims Act, and for failing to exhaust her administrative remedies regarding the discrimination/failure to accommodate claims relating to her diabetes.  ECF No. 18.  As to the remaining claims, the County moved for summary judgment on October 29, 2014, ECF No. 36, and Todd filed her

opposition and crossclaim for summary judgment on November 18, 2014, ECF No. 38.  On December 2, 2014, the County filed a related motion to strike numerous documents submitted by Todd and for sanctions.  ECF No. 39.

## STANDARD OF REVIEW

In evaluating a motion for summary judgment, the Court must assess whether there are any issues of material fact and whether the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Francis v. Booz, Allen & Hamilton, Inc*., 452 F.3d 299, 302 (4th Cir. 2006).  A dispute of material fact is "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986).  However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."  *Beale v. Hardy*, 769 F. 2d 213, 214 (4th Cir. 1986).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

When ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.  However, "if the evidence is merely colorable or not significantly probative, it may not be adequate to oppose entry of summary judgment."  *Thompson Everett, Inc., v. Nat'l Cable Adv*., 57 F.3d 1312, 1323 (4th Cir. 1995).

**DISCUSSION**

The remaining claims in this matter and at issue in the parties' current motions for summary judgment, include whether there was a wrongful withholding of donated sick leave pay and acting pay wages while on medical leave following Todd's injury, retaliation in the form of an increased case load after returning to work following that leave, failure to promote Todd to open positions, and failure to provide a reasonable accommodation.

**I.   Todd's Donated Sick Leave Wages and Acting Pay Claims are Moot**

The Court must first resolve the threshold issue of mootness before proceeding with Todd's substantive claims. *See Virginia ex rel. Coleman v. Califano*, 631 F.2d 324, 326 (4th Cir. 1980) ("Federal courts have no jurisdiction to decide moot cases because of the case or controversy requirement of Article III of the Constitution."). Mootness applies "when the question sought to be adjudicated has been mooted by subsequent developments." *Flast v. Cohen*, 392 U.S. 83, 95 (1968). The County carries a heavy burden when asserting mootness and is required to demonstrate 1) there is no reasonable expectation that the alleged violation will recur, and 2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. *Baltimore Neighborhoods, Inc. v. LOB, Inc.*, 92 F. Supp. 2d 456, 461 (D. Md. 2000) (citing *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). If both prongs are satisfied, the case is moot "because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law." *Davis*, 440 U.S. at 631.

This Court finds that the County has met its burden. A proper judicial resolution of a case or controversy "is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*." *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988). Todd has not met the exception to avoid mootness since there are no facts showing that she will continue to be subject to the

same discriminatory conduct by the County.  *See Baltimore Neighborhoods, Inc.*, 92 F. Supp. 2d

at 461 (finding that a declaration of the employer's violation of the ADA would have no effect

because the inaccessible building subject to the plaintiff's claim closed a year before trial).  In

this case, a declaration that the County violated the ADA would have no effect on the County

because Todd is no longer employed by the County, and she has already recovered the same

relief she is claiming here.

 Furthermore, the *Davis* test requires that "the relief demanded will actually cure the

lingering effects of the alleged violation."  *Id.* at 462.  By initiating a grievance procedure

pursuant to her union's Collective Bargaining Agreement, Todd effectively has already received

relief identical to that which she is requesting here.  *See id.* (stating that where the requested

declaratory judgment would only serve as an advisory opinion, the Court lacks jurisdiction to

hear plaintiff's ADA claim).  Therefore, Todd is precluded from relief in this Court regarding her

benefits, donated sick leave, and acting pay claims since she was successful in obtaining a

favorable resolution through her union grievance procedure.

## II.     No Showing of Discrimination for Failure to Promote

 Todd claims she was qualified for the Community Service Manager position, but was

denied the position based on her disability.  In a failure to promote case, a plaintiff employee

claiming discrimination always bears the burden of proving that the employer intentionally

discriminated against her.  *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 959

(4th Cir. 1996).  Todd's evidence falls short of that which is needed to overcome summary

judgment, revealing little, if any, direct or indirect evidence of a discriminatory motive based on

her disability.

Todd does not dispute that there were five other "high ranking" individuals who applied for the job, and Todd admits that she was not one of the highest ranking candidates after the interview process. ECF No. 38. Todd claims that the interview process was not fair because one of the interview panelists was "biased," having in the past accused her of stealing a $4,000 check. *Id.* Paradoxically, the very same panelist who Todd claims was the source of bias actually gave her the highest interview score out of the three panelists. ECF No. 36. Furthermore, even if a slight bias existed by one of the three interviewers, this Court fails to see the connection of the "bias" stemming from the stealing incident to Todd's disability or to the decision not to award her the position in question.

Todd also admits that the final hiring decision is placed on the Appointing Authority, who can choose the individual with the highest interview score or an individual who did not. Here, the Appointing Authority used this discretion and did not choose the highest scorer, but instead chose the employee that had the most experience within the specific employment field. The County asserts that the hiree had served as Acting Community Services Manager, and possessed superior knowledge and experience performing the job duties and dealing with the programs. *See Evans*, 80 F.3d at 960 (holding that the employee failed to satisfy her obligation to prove discrimination for failure to promote, where management did not consider her ready for the supervisory position and awarded the position to the person who they found best qualified to assume the job duties based on their prior supervisory experience). Without more, Todd has failed to meet her burden of proving that the County intentionally discriminated against her.

### III.    Todd Failed to Adequately Respond to the County's Arguments for Dismissal

As to the rest of the claims, Todd failed to respond to the County's arguments in her opposition and thus abandoned those claims. *See Mentch v. E. Sav. Bank, FSB,*

949 F. Supp. 1236, 1247 (D. Md. 1997) ("[Todd] abandoned her . . . claim by failing to address [it] in her opposition to [the County]'s reply brief.").  The only assertion made by Todd is that the County's arguments are barred by this Court's prior ruling and they are not ripe for consideration by the Court.

### a. Claim of Disability

Hearsay or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment.  *Jones v. Mayor and Council of Hurlock, Md.*, 2012 WL 3245946, at *6 (D. Md. 2012).  Todd's "building of one inference upon another" will not create a genuine issue of material fact.  *Beale*, 769 F.2d at 214.  *See also Ennis v. National Ass'n of Business and Educational Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) (citing *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985) ("Genuineness means that the evidence must create a fair doubt; wholly speculative assertions will not suffice.").  Rather than answering the County's argument that she is not disabled under the ADA, Todd merely responds that she suffered a work related injury to her knees, foot, and right hip.  Todd proffers as evidence the fact that the dates she was on extended leave do not match up with the County's argument and that the County's Human Resources Officer did not visit Todd at her home, instead requiring Todd to travel to the office to fill out Family and Medical Leave Act forms.  These are immaterial facts that are not germane to the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (finding that material facts are facts that "might affect the outcome of the suit under the governing law").  Furthermore, even if the facts were material, the issue of extended leave was one resolved through Todd's union grievance.

### b.  Reasonable Accommodation

Next, Todd argues she was denied a reasonable accommodation.  Her first accommodation request relating to her diabetes is precluded because this Court dismissed the claim.  ECF No. 18.  Todd claims her doctor's note advising the County of her ability to perform sedentary duties established a request for a reasonable accommodation for her knee, hip, and foot injury.  Todd requested light duty work onsite or remote work from home, which the County ultimately denied.  The denial of a request by a disabled employee can only subject the employer to liability if there is a "causal relationship between the disability and the request for an accommodation," or in other words, if "the requested accommodation was *necessary* in order for [her] to perform the essential functions of [her] job.  *Gaines v. Runyon*, 107 F.3d 1171, 1175 (6th Cir. 1997) (emphasis added).

In *Davis v. Lockheed Martin Operations Support, Inc.*, 84 F. Supp. 2d 707 (D. Md. 2000), the Court dealt with a similar issue where Davis's doctor allowed her to return to work but stated she would be "well-suited to work at home."  *Id*. at 710–11.  Davis insisted she be allowed to work from home, but her employer refused to grant this request.  The Court granted summary judgment, since Davis's employer did not need to "grant Davis's unsupported requests" to work from home, and noted that employers "are not required to give employees with a disability *any* accommodation they request."  *Id*. at 713.

Here, there was no evidence that Todd needed to work from home to perform sedentary duties.  There is also no evidence that her disability required her to work from home.  Because Todd's work from home request was not necessary to allow her to perform essential functions of her job, she was not denied a reasonable accommodation.  In fact, the essential functions of Todd's position included facilitating and coordinating public meetings, consultations and

workshops, assisting in the preparation of needs assessments and surveys, analyzing socio-economic data, policies and conditions, and preparing reports and administering and monitoring projects—all of which are sedentary in nature.  ECF No. 2, ¶ 10.

### c.  Increased Caseload

To establish a prima facie case of retaliation under the ADA, an employee must show that 1) she engaged in protected activity, 2) her employer acted adversely against her, and 3) her protected activity was causally connected to her employer's adverse action.  *Rhoads v. F.D.I.C.*, 257 F.3d 373, 392 (4th Cir. 2001).  The lack of a causal connection between the increased caseload and Todd's filing of the EEOC Charge is where Todd's retaliation claim fails; her timeline simply does not add up.  Pretextual actions for unlawful retaliation will not be found where the evidence shows that the allegedly adverse action taken by the employer was made prior to the employee's protected activity in participating in an EEOC investigation.  *Hunter v. Vilsack*, 2010 WL 1257997, at *11 (D. Md. 2010).  Todd's caseload was increased to twenty-five cases on returning to work in July 2010.  The first Charge of Discrimination was filed on August 4, 2010, which means the increase in Todd's caseload predated the charge.

Even though the County is not required to rebut a presumption of retaliation, since Todd did not establish the causal connection, the County has offered a legitimate nonretaliatory reason for the increase in caseloads.  *See id.* ("The employer then has the burden to rebut the presumption of retaliation by articulating a legitimate nonretaliatory reason for its actions.").  According to the County's business practices, all employees received an increase in their caseloads during July 2010 due to the new fiscal year.  ECF No. 36-2, at 13-14.  In addition, the second increase in Todd's caseload in October 2010 was due to Todd's detail to the Acting Community Developer III position, which required an increase in duties and responsibilities.  *Id.*

Todd's retaliation claim lacks both a causal connection in the prima facie case and does not withstand the County's legitimate business reason.

The Court finds that Todd has failed to produce any evidence which would allow a reasonable jury to find in her favor.  The Court also recognizes that most of the documents in Todd's Opposition were either not provided in discovery, not properly authenticated, or contain impermissible legal conclusions, hearsay, attorney work product, and settlement negotiations information.  *See* ECF No. 38.  These documents are inadmissible and shall be stricken pursuant to Federal Rule of Civil Procedure 12(f).  *See S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003) (detailing the factors for consideration when determining whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis); *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993) ("It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment."); *APL Corp. v. Aetna Cas. & Sur. Co.*, 91 F.R.D. 10, 18 (D. Md. 1980) (stating the test for determining inadmissible work product is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation"); *Equal Rights Ctr. v. Archstone-Smith Trust*, 251 F.R.D. 168, 171–72 (D. Md. 2008) (finding that discovery of settlement process is not permissible under the Rules).

Accordingly, it is this 5th day of May, 2015, by the United States District Court for the District of Maryland,

**ORDERED**, that Defendant's Motion for Summary Judgment (ECF No. 36) is hereby **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Opposition of Defendant's Motion for Summary Judgment, and Crossclaim Motion or in the Alterative, Motion for Summary Judgment (ECF No. 38) is hereby **DENIED**; and it is further

**ORDERED**, that Defendant's Motion to Strike and Motion for Sanctions (ECF No. 39) is hereby **GRANTED IN PART** as to the motion to strike all inadmissible documents in Plaintiff's Opposition (ECF No. 38), and **DENIED IN PART** as to the motion to sanction Plaintiff; and it is further

**ORDERED**, that judgment for costs is hereby **ENTERED** in favor of Defendant; and it is further

**ORDERED**, that the Clerk is hereby **DIRECTED** to close this case; and it is further

**ORDERED**, that the Clerk is hereby **DIRECTED** to mail a copy of this Order to Plaintiff and Counsel of Record.

_____
/s/
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE
